[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the incumbent cable television provider; Cablevision Systems of Southern Connecticut, Limited Partnership (Cablevision), in the Bridgeport franchise area; challenges the granting of a Certificate of Public Convenience and Necessity ("Certificate") to a competing provider, the Fibervision Corporation of Bridgeport ("Fibervision") in the Bridgeport area.
The Certificate was granted by the Connecticut Department of Public Utility Control ("DPUC") after hearings, Docket No. 93-10-06. The DPUC is an agency of the State of Connecticut charged by statute (General Statutes § 16-331 et seq.) with the certification, regulation and supervision of community antenna television (cable television) companies in the State of Connecticut. CT Page 9490
In addition to Cablevision, Fibervision and DPUC, the other party to this appeal is the Office of Consumer Counsel ("OCC"). The OCC is authorized pursuant to General Statutes § 16-2a to act as the consumer advocate in all matters that may effect ratepayers of public service companies.[1]
Fibervision applied on October 5, 1993 for a certificate to provide cable television service for the towns of Bridgeport, Fairfield, Milford, Orange, Stratford and Woodbridge (the "Bridgeport" area). Cablevision has been the sole provider of cable television services in the Bridgeport area.
The DPUC held public hearings on Fibervision's application on February 9 and 16, and March 7, 17 and 22, 1994.
The DPUC issued a draft decision on September 28, 1995, which was revised on October 13, 1995 to reflect issues affecting public access and the local advisory council.
On September 29, 1995 the parties and intervenors to the administrative hearing were invited to file written objections and oral argument concerning the draft decision.
Cablevision filed written exceptions to the draft decision on October 24, 1995.
On November 13, 1995, the DPUC issued a final decision dated November 8, 1995 (the "Decision") granting Fibervision's request for the Certificate. The franchise area covered by the Certificate is coextensive with the Bridgeport area currently served by Cablevision under its franchise.
On December 27, 1995 Cablevision filed a timely appeal from the DPUC Decision granting Fibervision's Certificate. The appeal is taken pursuant to General Statutes §§ 16-35
and 4-183.
Cablevision on March 15, 1996 filed a Motion For Remand And To Defer Briefing Schedule, which motion was denied on April 1, 1996. CT Page 9491
Cablevision's brief on the Appeal was filed on May 1, 1996. Fibervision's brief was filed on May 31, 1996, the DPUC's brief on June 1, 1996 and OCC's brief on June 3, 1996. The appeal was argued orally on October 29, 1996.
This case is one of a series involving incumbent cable television providers challenging the certificates granted by the DPUC to competitors.[2]
The Supreme Court in United Cable Television v. DPUC, supra, limited the incumbent's challenge to the level-playing-field statute General Statutes § 16-331 (i).[3] "The plaintiff's (incumbent cable television provider) interest in competing under comparable terms is a legally protected interest pursuant to § 16-331 (i). An allegation of a specific injury to the interest, therefore, can satisfy the second prong of the aggrievement test." 235 Conn. at 355.
In this appeal the essence of Cablevision's claim is that Fibervision is not competing fairly under its Certificate. The test of aggrievement requires a consideration of the Plaintiff's level-playing-field claim.
Despite the number of challenges to competing cable television certificates, this case represents the first instance in which the record allows a level-playing-field analysis.
Cablevision, though presenting an argument on the existing record, has unsuccessfully sought a remand to allow a level-playing-field comparison of Cablevision's and Fibervision's franchise agreements for the Bridgeport area.[4]
The availability of coextensive franchise agreements would facilitate the competitiveness analysis, but it is undisputed that neither franchise agreement presently exists.
Cablevision would prefer to await the DPUC issuance of the franchise agreements which are currently pending. However, the juxtaposition of future franchise agreements will not address the claim that Fibervision's Certificate gives it a competitive advantage over Cablevision's existing terms of operation. Logic and the protracted nature of the franchise agreement process suggest that the future franchise agreements will not simply mirror existing CT Page 9492 conditions.
The clear language of § 16-331 (i) supports the court's conclusion that it should compare the Fibervision Certificate with the conditions imposed on Cablevision. "Each certificate of public convenience and necessity for a franchise . . . shall not contain more favorable terms or conditions than those imposed on the existing franchise."
The court agrees with the Appellees, the DPUC, Fibervision and OCC that the record allows for a level-playing-field analysis. Though this represents the first instance in which a cable television level-playing-field analysis has been done by a Connecticut court, there is valuable guidance from the earlier decisions.
Though this represents the first instance in which a cable television level-playing-field analysis has been done by a Connecticut court, there is valuable guidance from the earlier decisions.
United Cable Television Services v. DPUC, 235 Conn. 334, supra, considered the legislative history of § 16-331 (i) and its predecessors. "The statutory scheme presently at issue . . . does not seek to insulate existing businesses from potential market saturation. It seeks, rather, to provide Connecticut customers with the benefits of competition and the best possible cable television services." 235 Conn. at 352. The scope of the § 16-331 (i) review is explicitly addressed at 235 Conn. 359-60: "A proper inquiry requires consideration of the entire package of terms and conditions required of both cable providers in order adequately to determine whether one has been favored over the other."
Cablevision offers in this case to compare Fibervision's Certificate conditions with a conglomerate of Cablevision's public access requirements, Cablevision's rebuilding requirements, Cablevision's voluntary local origin programming, the DPUC imposed conditions of other cable television providers, and generally applicable statutes and regulations.
Cablevision attempts to expand its limited interest in a level-playing-field to challenge the public interest concerns, which it has no standing to contest. United Cable
CT Page 9493v. DPUC, supra, at 235 Conn. 355: "If the plaintiff or any other existing competitor were allowed to claim injury pursuant to § 16-331 (i) and then obtain judicial review of all claims affecting competition, there would no longer be a general rule favoring free market competition. In this case, the plaintiff has established aggrievement only as to the level-playing-field provision and, therefore, may not appeal other issues as the court has no subject matter jurisdiction over these issues." (Citations omitted.)
It also does not seem within the parameters of the level-playing-field provision to contrast Fibervision's Certificate with conditions imposed on other cable television providers, as Plaintiff attempts, especially with respect to the hiring practices argument.
Removing claims as to public interest issues disposes of Plaintiff's standing to raise alleged DPUC failure to require Fibervision affiliates to construct cable systems elsewhere in the state (Plaintiff's Brief pp. 14-18), the construction build-out requirements of R.C.S.A. § 16-333-13
(b)(2) (Plaintiff's Brief pp. 18-20, anti-redlining provision of the Federal Cable Act (Plaintiff's Brief p. 21), community needs assessment postponement (Plaintiff's Brief pp. 24-26), and the franchise term claim (Plaintiff's Brief pp. 26-27). Eliminating the irrelevant comparison with non-party cable providers' terms and conditions, we are left with a quite limited review of the public access provisions, community origination conditions and whether there is a comparison between Fibervision's new system construction and Cablevision's system rebuild.
This seems hardly the entire package of terms and conditions analysis necessary for a "proper inquiry under § 16-331 (i)." The court must assume that in all other respects the terms and conditions are indistinguishable. In the area of public access, Cablevision contrasts its obligation to establish and maintain studio facilities with Fibervision's obligation to contribute to existing public access facilities. The inadequacy of such a claim was noted by Judge Hodgson in United Cable v. DPUC, supra, at p. 11.
 The illogicality of an item-by-item approach is clear when the court considers that TCI, or, rather its predecessor in interest, was granted CT Page 9494 its franchise in 1967. If it were required to achieve point-by-point equality in terms and conditions, the DPUC would be put in the position of imposing particular requirements on a new entrant not because of any real need but simply to match the situation that existed at the time of the application of the existing entrant, without regard to new information, new technology, or other temporal developments.
Here, Cablevision would have Fibervision duplicate existing public access facilities, rather than contribute a comparable pro rata amount to existing public access facilities. Cablevision even in an isolated comparison fails to demonstrate the competitive disadvantage it suffers under the DPUC decision on Fibervision's public access commitment. Cablevision currently spends approximately $200,000 annually on public access, which represents a per capital expenditure which is no greater, if not less, than the Fibervision public access contribution.
The comparison between Fibervision's task in creating a new system and Cablevision's rebuild plan is conceded by Cablevision to be of different projects. The Cablevision proposal is to rebuild in a shorter time than Fibervision's construction is not a DPUC mandate (Dec. p. 11, note 2). It also represents a different task, which is facilitated by Cablevision's substantial existing customer base.
In the "local origination" claim, Cablevision ignores the direction of the United Cable v. DPUC, supra, case which noted at 235 Conn. 359:
 It would frustrate one of the purposes of § 16-331, to provide customers with the benefit of competition, if existing cable providers voluntarily could take on additional burdens in order to reap a future benefit and then have potential competitors bound by those new terms viewed in isolation without reference to the terms of the original certificate.
With respect to its "local origination" claim, Cablevision is seeking to bind Fibervision to its voluntary assumption of a local origination obligation. Such a claim CT Page 9495 may not serve to block fair competition.
Cablevision has failed to demonstrate that Fibervision's Certificate "contain(s) more favorable terms or conditions than those imposed" on its existing franchise.
Cablevision has not established its aggrievement as a result of the DPUC decision granting Fibervision's Certificate.
Cablevision's evidentiary claims relating to Fibervision's affiliates financial situation fall on relevance grounds. Cablevision had no standing to raise the financial issues which were not germane to the level-playing-field analysis.
The final claim of Cablevision concerning its alleged compulsion to make its public access facilities available to Fibervision, misstates the DPUC decision. Fibervision is ordered to "negotiate a public access agreement with the local Advisory Council, as well as specific agreements with the educational institutions and media centers in its territory" (Dec. p. 8). Fibervision in addition to contributing $2,000 to the local Advisory Council, is to support public access at a per capita subscriber rate. The reality is that Cablevision's public access facilities are made available to the public, and Fibervision must contribute financially to facilitate public access utilization.
The Appeal is dismissed
Robert F. McWeeny, J.