[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9483
This case represents one in a series of challenges by incumbent cable television providers to the entrance of competitors into local cable television markets. See UnitedCable v. DPUC, Judicial District Hartford/New Britain at Hartford Docket No. CV94-0536175, August 30, 1994, Hodgson, J., and at 235 Conn. 334 (1995); United Cable v. DPUC,
Judicial District Hartford/New Britain at Hartford Docket No. CV95-0545653, January 19, 1996, Maloney, J.
The appeal is by Comcast Cablevision of New Haven, Inc. (Comcast) from a Connecticut Department of Public Utility Control (DPUC) December 20, 1995 decision granting Fibervision Corporation of New Haven's (Fibervision) application for a Certificate of Public Convenience and Necessity to Provide Community Television Service (Certificate) in the New Haven area.
Plaintiff, Comcast, is a community antenna television company (pursuant to General Statutes § 16-1) which provides cable television service in the area subject to Fibervision's application and certificate. Comcast operates pursuant to a nonexclusive certificate issued by DPUC to Comcast's predecessor corporation in 1967.
The DPUC is an agency of the State of Connecticut charged by statute (§ 16-331 et seq.) with the certification, regulation and supervision of community antenna television companies.
Fibervision is a competitor of Comcast in the provision of cable television services.
The Office of Consumer Counsel (OCC) is a party and represents the interests of consumers pursuant to General Statutes § 16-2a.
Comcast, Fibervision and the OCC were all parties to the administrative proceedings before the DPUC.
The DPUC decision grants the Fibervision application and authorizes the overbuilding of the New Haven area, already served by Comcast. CT Page 9484
Comcast contests the decision on the basis of three arguments (1) a challenge to the conclusion that Comcast's incumbency was an advantageous factor in evaluating "the level playing field" requirement of § 16-331(i); (2) a claim that DPUC adopted a standard for evaluating applications for overbuild certificates which eviscerates the "level playing field" statute; and (3) that the award of the certificate to Fibervision with respect to its build-out term is more favorable than Comcast's franchise conditions.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v.Department of Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope CT Page 9485 of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board ofEducation v. Freedom of Information Commission, 208 Conn. 442,452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."United Parcel Service, Inc. v. Administrator, UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
The Supreme Court in United Cable v. DPUC, 235 Conn. 334,346 (1995) determined that the DPUC when considering applications for certificates for provision of cable television services is protecting the interests of the public at large. A competitor's standing and interest are limited to the level playing field statute § 16-331 (i) which provides.
 Each certificate of public convenience and necessity for a franchise issued pursuant to this section shall be nonexclusive, and each such certificate issued for a franchise in any area of the state where an existing franchise is currently operating shall not contain more favorable terms or conditions than those imposed on the existing franchise. This subsection shall not apply to the length of the term of such certificate as may be determined pursuant to subsection (d) of this section.
In interpreting this statute United Cable, supra 235 Conn. 355, found that an existing competitor had a legally protected interest to compete under "comparable terms." CT Page 9486
 It [§ 16-331 (i)] envisions a level playing field so that an applicant for a new franchise does not enter the market at a competitive advantage. A new competitor's entry into a market under more favorable terms and conditions than those governing an existing competitor would represent the type of `unfair' or `illegal' competition that the existing competitor has standing to protest pursuant to § 4-183 and § 16-35. The plaintiff's interest in competing under comparable terms is a legally protected interest pursuant to § 16-331 (i). An allegation of a specific injury to this interest, therefore, can satisfy the second prong of the traditional aggrievement test. See Light Rigging Co. v. Dept. of Public Utility Control, 219 Conn. 168, 174
(1991).
The specific injury alleged by the Plaintiff is the build-out schedule afforded Fibervision compared with its historical build-out and its planned rebuild schedule.[1]
Plaintiff fails to meet its burden of establishing unfair competition even as to this questionable isolated comparison.
The franchise area has approximately 737 miles. Fibervision is allowed twelve years to complete construction.
Plaintiff argues that its predecessors were required to build-out their system in the franchise area in a six year period from date of commencement of service; at an approximate 20% annual rate. (R. IV-9 Plaintiff's brief, pp. 5, 6 footnote 13).[2]
Fibervision is required to build-out its system at a rate of not fewer than 150 miles a year for each of the first three years. Thus not less than 450 of 737 miles will be built-out in the first three years. This represents a 61% completion within three years, which is certainly comparable to Plaintiff's initial progress.
Plaintiff argues that it will be harmed by Fibervision CT Page 9487 being allowed to benefit from "redlining" low income areas[3]
and "cherry picking" high income areas. The Decision specifically finds that "Such a schedule is desirable to maximize the benefits of competition and prevent a selective strategy oriented only to the most profitable areas." The DPUC in addition to requiring 61% plus build-out in three years, demands a "comprehensive construction schedule" for five years, indicating the number of miles built and towns served. A quarterly review of compliance with the schedule is also mandated. The decision further requires Fibervision "to complete construction of essentially 100% of the franchise (approximately 737 miles) by the end of year 12 . . . ."
A further comparison of build-out schedules reflects no evident disparity in treatment. Comcast and its predecessors after receiving a certificate in 1967, did not connect a customer until 1976. (DPUC decision June 9, 1997 #76-06-01.) In 1977 Comcast was required to construct 121 miles of service. Further, Comcast had completed only 525 miles of cable plant by 1982. (DPUC decision April 27, 1982 #80-10-06 App. G. to Plaintiff's brief.)
To the extent that it is meaningful for the court to engage in an item-by-item comparison, such endeavor fails to show unfair competition with respect to the build-out schedule imposed on Fibervision compared with the history of Comcast and its predecessors.
This is especially the case where Fibervision is creating a "state-of-the-art" system compared with what was installed in the 1970's. Comcast also refers to its obligation to rebuild its system in three years.
The analogy between initial installation of a system and the rebuild of an existing system with a substantial customer base, is not compelling.
The Plaintiff has failed to meet its burden of proof as to its unfair competitive disadvantage with respect to Fibervision's build-out requirements.
Plaintiff's argument that the advantage of incumbency opinion is not supported in the record ignores undisputed evidence in the record. The record reveals that Comcast has CT Page 9488 been the monopoly cable television provider in the franchise area, with 68,000 customers and "is a subsidiary of one of the largest cable providers in the United States. Its marketing power is massive, especially in light of its interlocking ties with programming suppliers."
In that Plaintiff has failed to establish any prejudice to it by Fibervision's certificate, any error in the DPUC incumbency opinion is harmless. Pet v. Department of HealthServices, 228 Conn. 651, 662-63 (1994).
The final claim of Comcast asserts an error in applying the level plaintiff field status.
In United Cable, supra, our Supreme Court reviewed the history of 16-331 (i)[4] and found its purpose to promote competition. "The statutory scheme presently at issue, [§ 16-331] . . . does not seek to insulate existing businesses from potential market saturation. It seeks, rather, to provide Connecticut customers with the benefits of competition and the best possible cable television services." 235 Conn. at 352.
The DPUC correctly applied the statute to promote competition and expanded cable television services, while preserving the Plaintiff's right to compete under comparable terms.
The Appeal is dismissed
Robert F. McWeeny, J.