[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
Plaintiff Message Center Beepers, Inc. appeals a decision of the defendant department of public utility control (DPUC) approving the application of the defendant Southern New England Telephone Company (SNET) to change its voice messaging service tariff. The plaintiff appeals pursuant to General Statutes §§ 4-183 and 16-35. The defendants move to dismiss the appeal on the basis that CT Page 4095-S the court lacks subject matter jurisdiction. The court finds in favor of the defendants.
In August 1995, SNET filed with the DPUC an application seeking permission to amend its approved tariff for the voice messaging service it sells to the public. Specifically, the company sought to change Part II, Section 14, Sheet 5, paragraph H.1. As originally approved, the section read as follows:
 The Company may periodically, upon seven (7) days notice to the DPUC, offer as part of promotional campaigns or competitive responses not to exceed ninety days, credits on subscribers' future bills. The credit would be based on a customer's total VMS bill and would be applied in the subsequent billing period. In no case would such credits exceed a customer's average monthly VMS bill.
As proposed by SNET, the new section would read as follows:
 The Company may periodically, upon seven (7) days notice to the DPUC, offer as part of promotional campaigns not to exceed ninety days, credits on subscribers' future bills.
The company filed its application pursuant to Regs. Conn. State Agencies § 16-1-59A, which applies to "tariff filings which do not alter existing rates." In accordance with that regulation, the DPUC sent notice of SNET's filing to other companies on its mailing list, including the plaintiff. The plaintiff filed a request to intervene and an objection to SNET's application. Among other objections, the plaintiff asserted that SNET should have complied with General Statutes § 16-19, which applies to requests of public service companies to change the rates they charge the public for their services.
General Statutes § 16-19 would have required a hearing, but neither the regulation nor any statute requires a hearing on an application that is legally filed pursuant to the regulation. The DPUC did not hold a hearing in this case. CT Page 4095-T
After its review of SNET's application and the plaintiff's objection, the DPUC approved the application, holding that the change sought by SNET was not a change in its rates but merely a "textual" change in its tariff. It is that decision that is the subject of this appeal.
In their motions to dismiss, the defendants advance three arguments: (1) that the DPUC proceeding was not a contested case under the Uniform Administrative Procedure Act and, therefore, there is no statutory right to appeal; (2) that the plaintiff was not and ought not to have been a party to the proceeding as required by General Statutes § 16-35; and (3) that the plaintiff is not aggrieved by the DPUC's decision as required by § 4-183. The court finds in favor of the plaintiff on issues (1) and (2) but agrees with the defendants on issue (3).
Contested Case
The defendants contend that the DPUC proceeding was not a contested case within the meaning of the Uniform Administrative Procedure Act because there was no statutory requirement of a hearing, citing SummitHydropower Partnership v. Commissioner of EnvironmentalProtection, 226 Conn. 792 (1993). This argument is based on the theory that SNET's application did not involve a change in the rate charged for the voice messaging service. If the application did seek a rate change, the defendants concede, the DPUC proceeding would have been controlled by the provisions of General Statutes § 16-19, which require a hearing and which would have produced a "contested case" within the meaning of the UAPA. The defendants' argument on this issue may not be sustained.
Under the provisions of the tariff prior to the change, in conducting sales promotional campaigns, SNET was authorized to grant a reduction in the amounts charged to its customers on their future voice messaging service bills. The amount of the reduction was limited, however, to the amount of the "customer's average monthly VMS bill." Thus, if a customer's bill were $200 and the customer's average monthly bill were $150, the maximum credit allowed by the prior tariff would be $150 and the customer would have to pay $50 for the service. Under the CT Page 4095-U new tariff proposed in SNET's application, there is no limit on the reduction and, in fact, SNET planned to allow a credit of the full monthly bill. This is an obvious reduction in the amount a customer would have to pay for the service. The fact that SNET accomplishes the reduction by changing the text of the tariff rather than the figures in the rate chart is of no significance.
Since the change proposed by SNET involved a change in the rates it may charge for its services, the DPUC's proceeding on the application should have been in accordance with General Statutes § 16-19. That statute, as noted, requires a public hearing and the proceeding is a contested case under the UAPA. As the plaintiff points out in its brief to the court in opposition to the motion to dismiss, the DPUC cannot itself transform a contested case into something else by simply declining to hold a hearing required by statute. The court concludes that the proceeding in this case was a contested case.
Party Status
The second general argument raised by the defendants is that the plaintiff was not named as a party to the proceeding before the DPUC and that it has not established that it should have been named a party. The defendants citeOffice of Consumer Counsel v. Department of Public Utility Control,234 Conn. 624 (1995) in support of this argument.
In OCC v. DPUC, supra, 648, the Supreme Court held that General Statutes § 16-35 "places the burden on the appellant to establish in the Superior Court that it was made an actual party or that it should have been made an actual party to the proceedings of the DPUC from which it seeks to appeal." The Supreme Court did indicate that § 16-35 requires that the appellant was or should have been a "party" as distinguished from some other kind of participant, hence that court's use of the term, "actual party." OCC v. DPUC, supra, 234 Conn. 646. The Supreme Court did not, however, set forth the criteria that this court should consider in determining eligibility for "actual party" status in DPUC proceedings. Indeed, the majority opinion in that case specifically and clearly stated that it was not even deciding whether the provisions of the UAPA should control or whether some other CT Page 4095-V considerations should be taken into account. OCC v. DPUC, supra, 234 Conn. 649, n. 23.
It is incumbent on this court, therefore, in this case, to state the rule, albeit without the guidance of the Supreme Court, which, needless to say, would have been welcomed if offered. See id., 653, n. 3 (Berdon, J., dissenting).
As noted, the statutory requirement of party status for appeals of DPUC decisions is found in General Statutes § 16-35. In relevant part, that statute provides that "any . . . corporation or person aggrieved by any (decision of the DPUC) . . . in any matter to which he or it was or ought to have been made a party, may appeal therefrom in accordance with the provisions of section 4-183."
It is appropriate to search the regulations of the DPUC and the provisions of the UAPA for general criteria for party status in DPUC proceedings. These regulatory and statutory provisions were adopted subsequent to the enactment of General Statutes § 16-35, and it is presumed that the legislature was aware of the provisions of that statute when it adopted the provisions of the regulation and the UAPA and sought to make one consistent body of law. D'Amico v. Willis, 13 Conn. App. 124, 129 (1987).
General Statutes §§ 4-166(8)(C) and 4-177a(a)(2) of the UAPA together provide that a "party" is one whose "legal rights, duties or privileges shall be specifically affected by the agency's decision in the contested case."
Regs. Conn. State Agencies § 16-1-16, pertaining particularly to the DPUC, provides that the commissioners of the DPUC will initially name "as parties those persons whose legal rights, duties or privileges are being determined in the contested case and any person whoseparticipation as a party is necessary to the properdisposition of such proceeding." (Emphasis added.)
Regs. Conn. State Agencies 16-1-17, also pertaining particularly to the DPUC, provides a petition mechanism for persons whom the commissioners did not initially name as parties. That section provides that "the commissioners shall consider all such petitions and will name or admit CT Page 4095-W as a party any person whose legal rights, duties or privileges will be determined by the decision of the commissioners after a hearing, if the commissioners find such person is entitled as of right to be a party to said contested case or that the participation of such personas a party is necessary to the proper disposition of saidcontested case." (Emphasis added.)
Synthesizing the provisions of the UAPA and the regulations of the DPUC, especially those emphasized above, leads to an interpretation of the term party as used in General Statutes § 16-35 that is more inclusive than that which might be imposed if only the UAPA provisions were considered. Especially significant is the requirement that the DPUC name as parties those whose participation . . . is necessary to the proper disposition" of the case in addition to those who have a specific legal interest in the outcome. This means, in the court's view, that a person "ought to (be) made a party," in the parlance of § 16-35, if he has some significant, articulable interest in the outcome of the case even if he might not be legally aggrieved by an adverse decision. This interpretation necessarily requires a case-by-case analysis of the facts concerning the person's interest in the case.
Using the above interpretation as a yardstick, the plaintiff clearly falls within the scope of the term "party's as used in § 16-35. It appears undisputed that the plaintiff is a customer of defendant SNET whose telephone rates could be affected in the future by the DPUC's decision.
It is likewise undisputed that the plaintiff and SNET are competitors in the voice messaging service business. At the hearing before this court on the plaintiff's appeal, the plaintiff presented the testimony of David Wolf, the operations manager of the plaintiff's business in the Northeast region. Based on that testimony, the court finds that there is a reasonable possibility that the plaintiff will lose customers and revenues if SNET's application is approved by the DPUC.
Finally, it is undisputed that the DPUC named entities similar to and associated with the plaintiff as CT Page 4095-X parties in the departmental proceeding in 1994 at which SNET's original application to conduct a voice messaging business was adjudicated. The interests of those "parties" in the 1994 proceeding appear identical to the interests shown by the plaintiff in the proceeding under review in this case.
In combination, the facts summarized above indicate that the plaintiff has a significant, articulable interest in the DPUC's decision on SNET's application. The court concludes, therefore, that the plaintiff has met its burden of establishing that it should have been made an actual party to the DPUC proceeding.
Aggrievement
The defendants' final argument, that the plaintiff is not legally aggrieved by the DPUC's decision, is dispositive of the case in the defendants' favor.
"The fundamental test for determining aggrievement encompasses a well settled two fold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations and internal quotation marks omitted). Light Rigging Co. v.Dept. of Public Utility Control, 219 Conn. 168, 173
(1991).
The plaintiff claims that it is aggrieved by the DPUC's decision in this case on two grounds: (1) that it is a customer of SNET, purchasing telephone service from it; and (2) that it is a competitor of SNET, as discussed above.
The plaintiff claims that the DPUC's decision allowing SNET to reduce its voice messaging service rates CT Page 4095-Y could harm SNET's financial stability or cause it to seek an increase in its telephone rates to offset the loss in revenue. Either way, the plaintiff claims, the decision could have an adverse effect on the plaintiff as a customer of SNET's telephone service. The plaintiff is, of course, one of a legion of customers of SNET.
This court has previously considered whether the interest of a customer of a public service company is sufficient basis for aggrievement and standing to bring an administrative appeal. At the trial court level in OCCv. DPUC, supra, 234 Conn. 624 (1995), this court granted the defendants' motion to dismiss the appeal of the city of Hartford on the basis that the city did not establish aggrievement. Specifically, this court held that the city, as merely one of the electric company's many ratepayers, had failed to demonstrate "a legal interest in the subject matter of the [DPUC's] decision that is different from that of other members of the public when they purchase electric service." In support of its conclusion that the city had thus failed to satisfy the first part of the aggrievement test, the court citedConnecticut Business Industry Assn., Inc. v. Commissionon Hospitals Health Care, 214 Conn. 726 (1990) andConnecticut Business Industry Assn., Inc. v. Commissionon Hospitals Health Care, 218 Conn. 335 (1991). SeeOffice of Consumer Counsel v. Department of PublicUtility Control, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV93070451511 Conn. L. Rptr. 476 (May 9, 1994) (Maloney, J.).
As noted, in the OCC v. DPUC case, supra, the Supreme Court did not reach the issue of aggrievement. Rather, the Supreme Court decided that the city of Hartford lacked standing to appeal on the basis that the city had failed to establish that it ought to have been made a party to the DPUC proceeding. The reasoning of the trial court in that case on the issue of aggrievement, therefore, is still viable and is applicable to this case. Here, as in OCC v. DPUC, supra, the plaintiff is unable to demonstrate an interest in the subject matter of the DPUC's decision that is different from that of other members of the public purchasing telephone service. In accordance with the rationale of this court's decision in that case, the plaintiff is not aggrieved within the CT Page 4095-Z meaning of the UAPA.
The plaintiff also claims aggrievement on the basis that the decision allowing SNET to offer reduced rates for its voice messaging service will put the plaintiff at a competitive disadvantage. In support of this claim, the plaintiff presented the testimony of Mr. Wolf, summarized above.
"[I]n considering whether a plaintiff's interest has been injuriously affected by (an agency decision), we have looked to whether the injury he complains of (his
aggrievement, or the adverse effect upon him) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for (its) complaint." United Cable TelevisionServices Corp. v. Department of Public Utility Control, (Citation and internal quotation marks omitted; emphasis in the original.) 235 Conn. 334, 344-45 (1995). The interest sought to be protected must be within the "zone of interests to be protected or regulated by the statute . . . in question." Id., 345.
The plaintiff points to no statute or regulation that would specifically protect its competitive interest at stake in this case. In particular, there is no provision in § 16-19 that requires the DPUC to take into account the interests of competitors in determining to approve or reject applications for rate changes. Based on the reasoning of the court in the United Cable Television Services v. DPUC case, supra, the court concludes that the plaintiff is not aggrieved by the DPUC's decision in this case by reason of its status as a competitor of SNET.
The appeal is dismissed.