[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Hendel's Investors Company, owns the site of an CT Page 3352 operating gasoline station located on the west side of the Norwich-New London Road, Route 32, in Montville. Pursuant to C.G.S. §§ 14-321 and 14-322, defendant, Montville Zoning Board of Appeals, granted defendant, Christy's Market, Inc., a certificate of approval of location for a gasoline station for a site roughly diagonally across Route 32 from Hendel's site.
Claiming it has been aggrieved by the defendant board's issuance of the certificate of approval, Hendel's has brought this timely appeal pursuant to C.G.S. § 14-324.
 AGGRIEVEMENT
The plaintiff bares the burden of showing aggrievement. Aggrievement may be established by "facts established in the record as a whole, including the administrative record." StateLibrary v. Freedom of Information Commission, 240 Conn. 824,830-832 (1997). Plaintiff must both plead and prove aggrievement.
The issue of aggrievement is contested.
Initially, the primary claim of aggrievement was statutory aggrievement under C.G.S. § 8-8(b); plaintiff's property is within 100 feet of the subject property. Defendants contested the applicability of § 8-8(b). Plaintiff then abandoned the claim of statutory aggrievement. Plaintiff's Brief The Issue Of Aggrievement, September 16, 1998, p. 1. Section 8-8(b) does not apply to this appeal under C.G.S § 14-324. Bergeron v. Davis116 Conn. 553 (1933). See also, Colonial Beacon Oil Co. v. ZoningBoard of Appeals, 128 Conn. 351, 354 (1941).
Plaintiff now relies on a claim of classic aggrievement. Plaintiff alleges:
 "6. Plaintiff is aggrieved by the decision of the Defendant ZBA in one or more of the following respects:
"a. . . .
 "b. The Plaintiff has a specific personal and legal property interest which was specifically and injuriously affected by the action of the Defendant ZBA.
"c. The Plaintiff's property has been adversely effected and has been depreciated in value by virtue of the action of the CT Page 3353 Defendant ZBA."
Amended Complaint, December 31, 1997, p. 2. [104]
Defendants assert that plaintiff had to allege and prove aggrievement. Defendants claim plaintiff has not adequately alleged aggrievement; plaintiff did not allege any facts which, if proved, would establish aggrievement. Plaintiff only plead or stated the conclusory claim that it was aggrieved. The cases do say that aggrievement must be both alleged and proved. The court has not found any case wherein a court has held that failure to allege facts upon which the aggrievement is predicated warranted dismissal of the appeal. The court will not base its decision on this deficiency in pleading aggrievement.
Hendel's has argued:
 "Therefore, it is sufficient to establish a possibility that Plaintiff's interest would be adversely affected. . . . and that the plaintiff has a personal and legal property interest in which there is a possibility that such interest would be specially and injuriously affected by station across the street. . . ..
 "The Plaintiff intends to demonstrate at trial hearing that such a possibility exists and that classical aggrievement is established." Plaintiff's Brief On The Issue of Aggrievement, September 16, 1998, pp. 3-4.
The case law is clear. In acting on the application here, the defendant zoning board of appeals was not exercising any zoning power; rather it was acting as an agency of the state. Helfant v.Zoning Board of Appeals, 153 Conn. 93, 95 (1965); Tucker v.Zoning Board of Appeals, 151 Conn. 510, 514 (1964); Esso StandardOil Co. v. Zoning Board of Appeals, 148 Conn. 507, 508 (1961); and, Atlantic Refining Co. v. Zoning Board of Appeals,142 Conn. 64, 66 (1955).
Recent appellate decisions regarding aggrievement in appeals from state agencies begin with a quotation from State MedicalSociety v. Board of Examiners in Podiatry, 203 Conn. 295 (1987) regarding the test for aggrievement. Emulating the enlightened, this court does likewise:
"The fundamental test for determining aggrievement CT Page 3354 encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47, 478 A.2d 601 (1984); Bakelaar v. West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1984). Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. O'Leary v. McGuinness, 140 Conn. 80, 83, 98 A.2d 660 (1953). Hall v. Planning Commission, 181 Conn. 442, 445, 435 A.2d 975 (1980)." [Internal quotation marks omitted.] State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300 (1987).
Cases since Board of Examiners in Podiatry have sharpened the aggrievement focus. The claimed aggrievement or injury must come within the "zone of interests" which the statute or regulation in question was meant to protect. See, e.g., New England Cable TVAss'n. v. Dept of Public Utility Control, 247 Conn. 95 (September 22, 1998); Med-Trans, Inc. v. Department of Public Health,242 Conn. 152 (1997); United Cable Service v. Department of PublicUtility Control, 235 Conn. 334 (1995); New England RehabilitationHospital v. CHHC, 226 Conn. 105 (1993). Northeast Parking v. P. Z. Commission, 47 Conn. App. 284 (1997), certification denied,243 Conn. 969 (1998).
None of the parties had mentioned the "zone of interests" aspect of aggrievement as of the court hearing on this appeal. The court believes an extended look at "zone of interests" in the context of aggrievement is warranted. The meaning of "zone of interests" may be gained by reviewing several of the key cases wherein the principle was discussed. For that purpose, the Appellate Court, not long ago, made such a review in Lewis v.Swan, 49 Conn. App. 669 (August 11, 1998). That courts survey of the cases follows:
"In State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 524 A.2d 636 (1987), the plaintiff physician alleged unfair or illegal competition in his appeal from a declaratory ruling of the board of examiners in CT Page 3355 podiatry regarding the scope of podiatry practice in the state. The trial court dismissed the plaintiff's claim. In holding that the plaintiff physician had standing to appeal the boards ruling, our Supreme Court did not explicitly discuss the zone of interests test, but did state that `[a] licensed physician has a right and estate in his profession of which he cannot be deprived without due process of law. . . . Cases are legion holding, in one way or another, that the right of a licentiate to practice his profession is a property right, or a right in the nature of a property right, or a valuable franchise, or a valuable privilege. (Citation omitted; internal quotation marks omitted.) Id., 300. Thus, the plaintiff physician asserted an interest that was within the zone of interests to be protected by a constitutional guarantee, namely the right not to be deprived of his property interest in his medical license without due process of law. . . ..
 "In Light Rigging Co. v. Dept. of Public Utility Control, 219 Conn. 168, 173, 592 A.2d 386 (1991), the plaintiffs challenged a decision of the defendant department of the utility control (department) granting a certificate of public convenience and the necessity to a potential competitor. The plaintiffs in that case held certificates similar to the one being challenged. Again, the court did not discuss explicitly the zone of interests test, but concluded that the plaintiffs had standing to appeal the department's decision because the relevant statute expressly requires the to consider public need for the services to be rendered by an applicant before granting a certificate, thereby entitling existing certificate holders to be free of competition for which no need has been shown. Id., 177. Thus, the Light Rigging plaintiffs came within the zone of interests to be protected by the statute in question. . . .
"In United Cable Television Services Corp. v. Dept. of Public Utility Control, 235 Conn. 334, 663 A.2d 1011 (1995), the plaintiff, alleging unfair or illegal competition, challenged the granting of a certificate of public convenience and necessity to a potential competitor. In that case, our Supreme Court explicitly applied the zone of interests test to conclude that the plaintiff had no standing to vindicate the interests protected by three out of four statutory sections at issue. The court held that consumers were the only class intended to be protected by those three CT Page 3356 sections and that competitors had no standing to assert violations of them. Id., 346. As in Light Rigging, a particular statute was alleged and relied on to grant protection to the plaintiffs as competitors.
 "As to the fourth statutory section at issue in United Cable, the parties did not dispute that the plaintiff had standing to challenge its alleged violation. Our Supreme Court nonetheless confirmed that this particular section `requires the department specifically to take into account the existing franchise holder's interests when determining the terms and conditions under which a new franchise will be created. It envisions a level playing field so that an applicant for a new franchise does not enter the market at a competitive advantage.' [Footnote omitted.] Id., 354-55. . . ..
 "In Med-Trans of Conn., Inc. v. Dept. of Public Health Addiction Services, supra, 242 Conn. 152, the plaintiffs held licenses to provide ambulance services in a particular county. They appealed to the trial court from the decision of the defendant department of public health and addiction services (public health department) granting another entity a license to provide ambulance services in the same area. The court applied the zone of interests test and held that the trial court properly dismissed the plaintiffs' appeal. The court's rationale was that the statute concerning the licensing of ambulance services requires the public health department primarily to protect the public at large and not the interests of individual competitors such as the plaintiffs. Id., 165."
 Lewis v. Swan, 49 Conn. App. 669 (August 11, 1998).
Lewis v. Swan, extensively quoted above, was not an administrative appeal. Plaintiff, a builder and developer sought mandamus and injunctive relief again town zoning officials to enforce certain zoning regulation provisions against another developer. The court defined the controversy.
"The dispositive issue in this appeal is whether a builder and developer who alleges that he engaged in owning and developing properties for many years in a particular town has standing to seek judicial aid to enforce that town's zoning regulations against another developer." Lewis v.CT Page 3357 Swan, 49 Conn. App. 669, 671 (August 11, 1998).
The Appellate Court stated: ". . . the primary purpose of zoning is to protect the public at large, not the competitive interests of individual developers such as the plaintiff." 49 Conn. @ 681. The Appellate Court held: "The plaintiff has no standing to challenge the town zoning officials' alleged failure to enforce particular zoning regulations against the defendant Chelsea. The trial court properly dismissed the plaintiff's complaint." Lewis v. Swan, 49 Conn. App. 669, 682 (August 11, 1998).
The latest word on "zone of interests" and aggrievement came from the Supreme Court shortly after the Appellate Court's Lewisv. Swan decision. See New England Cable TV Ass'n. v. Dept ofPublic Utility Control, 247 Conn. 95 (September 22, 1998).
New England Cable TV Ass'n. v. Dept of Public UtilityControl, 247 Conn. 95 (September 22, 1998), also involved cable television franchises. The plaintiffs, Cablevision of Connecticut, Limited Partnership (Cablevision), and Cablevision Systems of Southern Connecticut, Limited Partnership (Cablevision Systems) are the cable television providers for two of the twenty-four cable franchise areas in Connecticut. Defendant, SNET Personal Vision, Inc. (Personal Vision) was granted a certificate of public convenience and necessity by the defendant, Department of Public Utility Control (DPUC). The certificate issued to Personal Vision granted a statewide franchise to provide community antenna television service, i.e., CATV or cable. It granted Personal Vision the right to provide service in the areas where Cablevision and Cablevision systems had been the sole provider. Cablevision and Cablevision Systems will be competitors of Personal Vision.
Cablevision and Cablevision Systems appealed the issuance of the certificate to Personal Vision.
The New England Cable plaintiffs claimed that the governing statute, C.G.S. § 16-331(a) precludes issuance of "a competing franchise which will serve the entire state." These plaintiffs maintained the DPUC could issue a certificate to "a new competitor to operate only within existing franchise boundaries." They claimed authorization of a statewide franchise area was unlawful because it violated C.G.S. § 16-331(a). Plaintiffs also claimed they could challenge the certificate because of the CT Page 3358 violation of C.G.S. § 16-331(a), or in conjunction with their right to be free from unfair competition pursuant to § 16-331
(g). That section, § 16-331(g), is "commonly denominated as the `level playing field' statute, prohibits the department from issuing a certificate to a competing franchisee that contains more favorable terms or conditions than those applicable to incumbent franchisees." 247 Conn. @ 101.
The Supreme Court held "plaintiffs lack standing to raise the legality of the issuance of a statewide franchise either directly or under § 16-331(g) because they lack aggrievement to that issue." 247 Conn. 103.
The Supreme Court concluded that the intended beneficiary of [C.G.S. § 16-331(a)] is the public at large, not incumbent franchisees." 247 Conn. 106. "No rational reading of § 16-331(a) could lead to the conclusion that it should be construed as protecting the interests of an incumbent franchisee from competition, statewide or otherwise." 247 Conn. @ 107. The plaintiffs were not aggrieved by the grant of a statewide franchise.
 "In sum, we conclude that the plaintiffs are not aggrieved with respect to the issue of the legality of the issuance of a statewide franchise. As incumbent franchisees, they may assert that the authorization of a statewide franchise constitutes a more favorable term, which is prohibited pursuant to § 16-331(g), as compared to their own certificates which, presently, are limited to community-based franchise areas. See part III C of this opinion. They may not, however, simply raise the issue of whether the grant of a statewide franchise is legal pursuant to § 16-331(a) either directly or under the guise of a § 16-331(g) unfair competition claim." [Footnote omitted.] 247 Conn. @ 110.
With contours "zone interests" place, the court must determine the zone of interests protected by C.G.S. § 14-319 et seq. The criteria for issuance of certificate of approval are set forth in the statute:
"No certificate of approval shall be issued unless the local authority finds that the location is suitable for the sale of gasoline and the other products referred to in section 14-319, due consideration being given to the proximity of CT Page 3359 schools, churches, theaters or playhouses of other places of public gatherings, intersecting streets, traffic conditions, width of highway and effect of public travel, and that such use of the proposed location will not imperil the safety of the public." C.G.S. § 14-322.
Clearly public safety is the sole concern of the statute.
The case law is to like effect.
 "General Statutes § 14-322 is primarily concerned with factors pertaining to public safety rather than property values. Esso Standard Oil Co. v. Zoning Board of Appeals, 148 Conn. 507, 508, 172 A.2d 607. To issue a certificate of approval under § 14-322, the board was required to find that the proposed location was suitable, due consideration being given to the factors designated in the statute, and that the proposed use would not imperil the public safety." McDermott v. Zoning Board of Appeals, 150 Conn. 510, 512-3
(1963).
 "In passing on an application for the approval of a location of a service station, the board acts as an agent of the state under General Statutes §§ 14-321 and 14-322, its sole function being to determine if the site in question will be suitable according to specific statutory criteria designed to promote and protect the public safety. [Footnote omitted.] McDermott v. Zoning Board of Appeals, 150 Conn. 510, 511, 191 A.2d 551; Esso Standard Oil Co. v. Zoning Board of Appeals, 148 Conn. 507, 508, 172 A.2d 607; Dubiel v. Zoning Board of Appeals, 147 Conn. 517, 520, 162 A.2d 711; Silver Lane Pickle Co. v. Zoning Board of Appeals, 143 Conn. 316, 319, 122 A.2d 218; Atlantic Refining Co. v. Zoning Board of Appeals, 142 Conn. 64, 66, 111 A.2d 1; Herrup v. Hartford, 140 Conn. 622, 628, 103 A.2d 199." Helfant v. Zoning Board of Appeals, 153 Conn. 93, 95, (1965).
In another case, the Supreme Court defined the issue before the administrative board as follows:
"Could the board reasonably conclude that the presence of the gasoline station at that place would unduly imperil the safety of the public? Colonial Beacon Oil Co. v. Zoning Board of Appeals, 128 Conn. 351, 354 (1947)." Mrowka v.CT Page 3360 Board of Zoning Appeals, 134 Conn. 149, 155 (1947).
Plaintiff recognizes that public safety is the focus of statute. Plaintiff has told the court:
 "Defendant Christy's had the burden to prove that the location is suitable based on the `effect on public travel' and `the location will not imperil the safety of the public.'" Plaintiff's Brief In Support Of Its Appeal, December 30, 1997, p. 7.
Plaintiff also says the issues raised in its appeal
 "all emanate from the decision making process of the ZBA in deciding that the applicants location was a suitable location under considerations of highway safety. Therefore, the issues raised are all within the framework of Section 14-322
which incorporates factors of traffic conditions, width of highway and effect on public travel as part of the decision making process." Letter, September 25, 1998, from Francis J. Pavetti, Esq., Hendel's counsel, to court.
Like the statutes for the cable television and the ambulance service franchises in United Cable Television, New England CableTelevision, and Med-Trans of Conn., the public at large is the beneficiary under C.G.S. § 14-322.
The court concludes that the safety of the public is the sole interest which must be considered and satisfied in determining whether a certificate of approval for a gasoline station location should be issued.
The only evidence in support of aggrievement was the testimony of plaintiff's managing officer, Myron Hendel. He testified:
 Q Now, do you have an opinion as to whether if a gasoline station would be located on the Delia property you just testified which is diagonally across the street from your property, would that adversely affect your property interest?
A Yes.
Q Would you tell us why, in your opinion, that adversely CT Page 3361 affect your property interest?
 A Because basically another business or anything across the street will add congestion to the highway. People will stop and make a — if you're from Norwich to New London, you're heading south, people will stop, they have to make a left-hand turn. The highway is very heavily traveled now. There have been accidents over the last three years, as stated in the record 19 accidents, and I believe and think that it will imperil and create additional congestion and additional accidents.
 Q And that would have an adverse effect on you property interest?
A Yes.
Q Why is that?
 A Because if people are concerned about more congestion and more traffic, they'll just drive by our property and not turn in.
Transcript of proceedings, 9/24/1998, p.
The essence of plaintiff's claim of aggrievement is that perhaps some southbound drivers, potential Hendel's customers, irked by and/or impatient with congestion caused by other southbound drivers waiting to turn left into Christy's station, might drive on past Hendel's gas station rather than entering Hendel's and purchase gasoline, etc. [Of course, it as likely southbound drivers would turn right into Hendel's rather than wait for a break in the northbound traffic and cross over the northbound to get to Christy's.]
By no stretch is Hendel's claim of aggrievement an interest afforded protection by the statute. It has nothing to do with public safety.
There is nothing in the statute which even remotely hints at protecting the interest Hendel's claims. Paraphrasing New EnglandCable Television, no rational reading of § 14-322 could lead to the conclusion that it should be construed as protecting the interests of Hendel's from competition. 247 Conn. @ 107. Nor does § 14-322 lend protection to Hendel's property interests. Hendel's CT Page 3362 claimed aggrievement does not come within C.G.S. § 14-322's zone of interests.
Hendel's is a competitor of Christy's. Plaintiff recognizes that being a competitor standing alone does not afford aggrievement status. However, Hendel's points to McDermott v.Zoning Board of Appeals, 150 Conn. 510 (1963), for solace. In that case, the plaintiff gasoline station operator appealed the grant of a certificate of approval issued for a property near his station. Plaintiff McDermott had to show aggrievement.
 "McDermott attempted to sustain this burden by showing that a gasoline station on the site proposed would increase the existing traffic congestion on this heavily traveled highway and would depreciate the value of his property. The court, however, failed to credit his proof of property devaluation, found that McDermott had `no standing in court as a competitor,' and concluded that he was not aggrieved. McDermott v. Zoning Board of Appeals, 150 Conn. 510, 512
(1963).
The Supreme Court reversed; it held that "the mere fact that one is a business competitor does not disqualify him from being an aggrieved person for other valid reasons." 150 Conn. @ 514. The Court continued:
 "In addition to the evidence concerning depreciation in the value of his property, McDermott offered evidence that the proposed station would be located on a curve approximately across the avenue from his gasoline station, that the traffic on the avenue is extremely heavy now and that another gasoline station would increase the already existing congestion and create more cross traffic. The court, in determining the issue of aggrievement, should have considered this evidence from the viewpoint not alone of property values but of whether McDermott's interests would be substantially and materially affected by the board's finding that the proposed location was suitable and that its use for a gasoline station would not imperil the safety of the public. There is no rule of thumb applicable to every case. Whether a person is aggrieved by the action of an administrative authority must depend, in large part, on the circumstances of the particular case.
"Although an appellant may not prove that he is aggrieved CT Page 3363 solely by reason of the fact that a proposed gasoline station would, in view of competition, depreciate the value of his property, he is not to be penalized because that feature is in the case. The mere fact that one is a business competitor does not disqualify him from being an aggrieved person for other valid reasons. 1 Rathkopf, Law of Zoning and Planning (3d Ed.) p. 40-16; accord, Zuckerman v. Board of Zoning Appeals, 144 Conn. 160, 163, 128 A.2d 325; Farr v. Zoning Board of Appeals, 139 Conn. 577, 583, 95 A.2d 792. This is not to say, of course, that an aggrievement for valid reasons other than competition is not an essential element. See Langbein v. Planning Board, 145 Conn. 674, 676, 146 A.2d 412. The trial court, in dismissing the appeal, applied an incorrect standard of aggrievement." McDermott v. Zoning Board of Appeals, 150 Conn. 510, 513-514 (1963).
Frankly, the court does not believe McDermott states the law today. It does not recognize the "zone of interests" analysis. "Zone of interests," which clearly is a part of aggrievement law today, would preclude McDermott from establishing aggrievement by showing his
 "interests would be substantially and materially affected by the board's finding that the proposed location was suitable and that its use for a gasoline station would not imperil the safety of the public." 150 Conn. @ 513.
That is because C.G.S. § 14-324 does not afford any protection to anyone but the public at large. Thus, Hendel's receives no support today from McDermott. The language of the statute provides no support at all for an assertion that the General Assembly intended to protect existing gasoline stations from the effects of another gasoline station being permitted in the area.
To the extent that McDermott says or implies, if indeed it does, that McDermott or Hendel's was aggrieved because of the finding the new gasoline station "would not imperil public safety," it conflicts with basic aggrievement law that the interest a plaintiff must assert must be different from that of the public at large." Thus, a plaintiff, a McDermott, or Hendel's, in anointing himself or itself a champion for public safety must fail in basing aggrievement thereon because such a plaintiff cannot "successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as CT Page 3364 distinguished from a general interest, such as is the concern of all members of the community as a whole." State Medical Societyv. Board of Examiners in Podiatry, 203 Conn. 295, 299-300 (1987). If Hendel's interest is public safety, that interest is the same general interest of the public at large.
Plaintiff also relies on Gregorio v. Zoning Board of Appeals,155 Conn. 422 (1967). This case did not involve C.G.S. § 14-319
et seq. The zoning board of appeals granted approval of a special use and a variance so that a gasoline station could operated on the subject site. The zoning regulations required a minimum distance of 400 feet between gasoline stations. The variance relaxed the 400 feet requirement. The plaintiff operated a gasoline station located across the street from and less than 100 feet from the subject site. Plaintiff appealed. A principal issue was aggrievement. The trial court found the plaintiff was aggrieved.
 "In so doing, the board permitted the proposed use within 400 feet of the plaintiff's station. The plaintiff has made a substantial investment in his station, and another station directly across the street would increase competition and affect the plaintiff's business adversely by causing him to lose business. Poquonock Avenue is only thirty feet wide. The court concluded that the proposed station of the Phillips Petroleum Company would cause traffic hazards because of its location in relationship to the interstate route 91 ramp heading south and that it would imperil the safety of the public because of the traffic hazards developing from its establishment. It also concluded that the plaintiff is aggrieved by the action of the board for the following reasons: (1) It relates directly to the present location of the plaintiff's station. (2) It affects the plaintiff directly. (3) It raises the probability of increased traffic hazards and traffic congestion if the proposed station enters into operation. (4) It threatens to depreciate his substantial investment in his lease, personal property and the property rights connected with his present station." 155 Conn. @ 425.
The Supreme Court upheld the trial courts finding the plaintiff was aggrieved:
"The fact that the proposed gasoline station would result in competition harmful to the plaintiff's business would not be CT Page 3365 sufficient to qualify the plaintiff as an aggrieved person. . . . The additional findings of the trial court, however, that the action of the board relates directly to the location of the plaintiff's gasoline filling station, affects the plaintiff directly, and raises the probability of increased traffic hazards and traffic congestion if the proposed station enters into operation constitute valid grounds for aggrievement. It was the court's function to decide whether, under these well-established principles, the plaintiff had proved that he was aggrieved. . . . It cannot be said that on these facts the trial court was in error in finding that the plaintiff was an aggrieved party." [Citations omitted.] Gregorio v. Zoning Board of Appeals, 155 Conn. 422, 426 (1967).
The Supreme Court agreed the plaintiff was aggrieved. It is clear that the underlying zoning regulation prohibiting gasoline stations within 400 feet afforded plaintiff protection; plaintiff's gasoline station was less than 100 feet of the proposed gasoline station and thus within the zone of interests protected by the zoning regulations. Gregorio does not lend plaintiff any help; in fact it cuts against plaintiff because it shows that Gregorio's claimed aggrievement was within the zone of interests afforded protection by the zoning regulations, specifically the regulation which prohibited gasoline stations within 400 feet.
Hendel's also cites Mystic Marine Aquarium, Inc. v. Gill,175 Conn. 483 (1978). The court cannot fathom — a word appropriate for a case involving a river — how this case bears on any issue in this case.
The court concludes that Hendel's case for aggrievement fatally flawed because the interest or injury claimed is not within the zone of interests given protection by C.G.S. § 14-322.
Hendel's places great stock in the seeming low level of proof needed to establish aggrievement. Plaintiff quotes from the case law.
 "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected." Plaintiff's Brief On The Issue Of Aggrievement, September 16, 1998, p. 2.
CT Page 3366 That statement of the law is correct. State Medical Societyv. Board of Examiners in Podiatry, 203 Conn. 295, 300 (1987); andNortheast Parking, Inc. v. Planning and Zoning Commission,47 Conn. App. 284, 288 (1997), certification denied, 243 Conn. 069
(1998).
Plaintiff's reliance on the "possibility" of an adverse affect is disabled by the rest of the statement, that "somelegally protected interest has been adversely affected." [Italics added.] The court has held above that the interest Hendel's relies upon is not a "legally protected interest" under C.G.S. § 14-322.
Furthermore there is a difference between a "possibility" and rank speculation. Hendel's evidence on aggrievement is no more than speculation. Even if the court were to accept this evidence at face value, the court would not find plaintiff established aggrievement, even with the low threshold of the law, i.e., a "possibility."
At best, Hendel's evidence on aggrievement was that some motorists, due to the congestion that might be caused by the competing gasoline station might not patronize Hendel's. This translates into a claim that Hendel's might lose business, impacting adversely on Hendel's revenues.
In New England Rehabilitation Hospital of Hartford, Inc. v.CHHC, 226 Conn. 105 (1993), two hospital groups applied to the defendant Commission on Hospital and Health Care (CHHC) for permission to build, develop and operate a rehabilitation hospital. The CHHC granted the defendant group's application. It denied the plaintiff group's application. Plaintiff appealed both decisions. The trial court dismissed plaintiff's appeal of the decision granting the defendant group's application.
"In its decision dismissing the plaintiffs' complaint, the trial court ruled that the plaintiffs' allegations of loss of opportunity to provide a service and gain revenues contained within these affidavits were insufficient to substantiate their claim that they had a specific personal and legal interest in the subject matter of CHHC's decision to approve the defendants' certificate of need application. Because the plaintiffs failed to meet the first prong of the aggrievement test, they had no standing to appeal the decision." New England Rehabilitation Hospital of Hartford, Inc. v. CHHC,
CT Page 3367 226 Conn. 105, 119 (1993).
The Supreme Court in upholding the trial court stated:
 "To satisfy the aggrievement requirement of 4-183(a) and 19a-158, the plaintiffs must allege a legally protected interest that is concrete and actual, not merely one that is hypothetical. A speculative loss of revenue is insufficient to confer standing and establish aggrievement. See State Medical Society v. Board of Examiners in Podiatry,
supra, 301. The plaintiffs claim that the granting of the defendants' certificate of need application caused them to "lose profits, revenues and their competitive positions in the health care community." Specifically, they claim that by granting the defendants' certificate of application, CHHC has: (1) undermined their ability to demonstrate a need for their facility; (2) diluted the value of their intended certificate of need; . . . The[se] first two allegations constitute no more than a suggestion of economic disadvantage caused by competition. This is not sufficient to qualify. See State Medical Society v. Board of Examiners in Podiatry,
supra, and cases cites therein." [Footnote omitted.] New England Rehabilitation Hospital of Hartford, Inc. v. CHHC, 226 Conn. 105, 127 (1993).
The court held that the plaintiff had not established the first prong of aggrievement.
The court also held that the plaintiff had not established the second prong.
 "Even assuming that the plaintiffs had established a specific personal and legal interest to satisfy the first part of the Light Rigging Co. test, they failed as to the second prong, namely, to prove that such interest had been specially and injuriously affected by CHHC's decision. Loss of future revenues is but a prospective and speculative injury, insufficient to qualify the plaintiff as aggrieved, unless the competition at issue is "unfair" or "illegal." State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 302-303, 524 A.2d 636 (1987), and cases cited therein." New England Rehabilitation Hospital of Hartford, Inc. v. CHHC, 226 Conn. 105, 137 (1993).
The source of Hendel's claimed aggrievement, which the court CT Page 3368 bottomlines as a possible loss of revenues and profits, is not cognizable in establishing aggrievement or either prong of the established test for aggrievement.
The court holds that the plaintiff is not aggrieved. The appeal therefore must be dismissed.
 THE MERITS OF THE APPEAL
The plaintiff has not established aggrievement. Perhaps the court should not consider the substantive issues raised by the appeal. The court is aware that its finding of lack of aggrievement may be challenged. The costs to the litigants, timewise and dollarwise, are such that the court will make its findings and conclusions on substantive issues so that in the event the court's aggrievement decision is not upheld, the parties will not have to relitigate those issues on the trial court level. This seems prudent since the court has fully heard these matters. Furthermore, the court, in the interest of judicial economy should decide the issues now if it may eliminate the need for judicial consideration of these issues in the future.
Plaintiff points to three reasons for finding the approval of this location as suitable for a gasoline station was improper and requiring this court to find the action of the defendant zoning board of appeals was unlawful, erroneous, arbitrary, capricious, etc. For brevity, the court labels these claims as (1) sight line, (2) accident statistics, and, (3) improper delegation.
The sight line and accident statistics issues challenge factual conclusions reached by the defendant board. The court is therefore bound by the substantial evidence rule.
"The department's determination that Personal Vision's certificate does not contain more favorable terms than those of the incumbents contain is primarily a factual conclusion. Our review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or CT Page 3369 decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. (Internal quotation marks omitted.) Connecticut Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51, 57, 591 A.2d 1231 (1991); see also DiBlasi v. Zoning Board of Appeals, 224 Conn. 823, 829-30, 624 A.2d 372 (1993). An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 744, 626 A.2d 705 (1993); Connecticut Light Power Co. v. Dept. of Public Utility Control, supra, 57. Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. (Internal quotation marks omitted.) Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, 601, 590 A.2d 447 (1991); Connecticut Light Power Co. v. Dept. of Public Utility Control, supra, 57. This `substantial evidence' standard is highly deferential and permits less judicial scrutiny than a `clearly erroneous' or `weight of the evidence' standard of review. Connecticut Light Power Co. v. Dept. of Public Utility Control, 216 Conn. 627, 640, 583 A.2d 906 (1990). The burden is on the plaintiffs to demonstrate that the department's factual conclusions were not supported by the weight of substantial evidence on the whole record. See id.; Office of Consumer Counsel v. Dept. of Public Utility Control, 246 Conn. 18, 36-37, ___ A.2d ___ (1998)." New England Cable TV Ass'n. v. Dept. of Public Utility Control, 247 Conn. 95, 117-118 (September 22, 1998).
The foregoing may imply that the "substantial evidence rule" is based on C.G.S. § 4-183(j) which is a part of the Administrative Procedure Act, C.G.S. §§ 4-183 et seq. According to the plaintiff, this appeal was taken pursuant to C.G.S. §14-324. That section states the appeal may also may have been pursuant to C.G.S. § 4-183. Surely, the General Assembly did not authorize different standards for review if the appeal were taken pursuant to § 14-324 rather than if taken pursuant to §4-183 et seq. The substantial evidence standard also is applicable if the appeal is taken pursuant to § 14-324. One text writer says: CT Page 3370 "Appeals to the Superior Court are allowed by section 14-324
which provides that the appeal follows section 4-183." [Footnote omitted.] Fuller, Land Use and Practice, § 44.2. In the analogous situation of zoning board of appeals' decisions on locating automobile dealers and repairers taken pursuant to C.G.S. §14-57, it has been held that such appeals are governed by §4-183, including the substantial evidence rule. Vicino v. ZoningBoard of Appeals, 28 Conn. App. 500, 505 (1992). See also, Fuller,Land Use and Practice, § 44.1 (1998 pocket part).
In an earlier case involving an appeal regarding a gasoline station location, the Supreme Court sanctioned a standard of review even more deferential to the board's conclusions. EssoStandard Oil Co v. Zoning Board of Appeals, 148 Conn. 507 (1961). If the court's review of the board's proceedings shows the issues of public safety were "fairly debatable," the court must sustain the board's decision. Id., 509.
The court reviews the sight line and accident statistics claims to determine whether the board's decision was "supported by the weight of substantial evidence on the whole record."
The court notes that the defendant board in considering this matter, based its decision in part "on its knowledge of the area." Minutes of the Montville Zoning Board of Appeals, August 6, 1997, p. 2. Return of Record, Item # 5.
Regarding the sight line, plaintiff claims the front boundary of the property located to the immediate south of the subject site, (designated "Etchells" on the drawing, Gasoline Station Location Plan, etc., Return of Record, Item 24) is further west (towards Route 32) than the front boundary of the subject property. That drawing and the copy of a portion of an Assessor's map (Return of Record, Item # 7), the two exhibits before the board one the issue, show that the front boundary of the Etchells property is further west than the front boundary of Christy's Market site thereby narrowing the highway right of way. Both front boundaries are also part of the east line of the highway right of way. The front (west) boundary of the Etchells property is perhaps twenty feet west of and parallel to a southerly extension of the front boundary of the subject property. The property across Route 32 diagonally northwest Etchells property also extends further easterly than Hendel's property adjacent to the north narrowing the right-of-way. Thus, the right of way near (just south of) the subject site narrower than at other points in CT Page 3371 the immediate area. Contrary to Hendel's statement that "this results in a narrowing of the highway," the traveled portion of the highway is not effected at all. The width of the traveled portion of Route 32 remains constant. The traveled portion of the highway is relatively straight for some considerable distance north and south of the subject site. See, Drawing: Gasoline Station Location Plan, etc., Return of Record, Item 24. Defendant Christy's Market presented the report and testimony of a traffic engineer. The report stated: "Across the site frontage Route 32 provides a single travel lane and a shoulder of 4 to 6 feet in each direction along a generally level and tangential alignment. Letter dated May 8, 1997 from F.A. Hesketh Associates, Inc. to Christy's Market Inc., p. 2; Return of Record, Item 8. That configuration continues well south of the Christy's Market site. Drawing: Gasoline Location Plan, etc., Return of Record, Item # 24. It was he engineers opinion that "[n]o sight limitations exist at any of the site driveways." Id. @ 2. Hendel's counsel questioned the engineer:
 Mr. Pavetti: You would agree that narrows the travel lane of the Highway?
Mr. Hesketh: I would not agree to that. No.
Transcript of Public Hearing, July 9, 1997, p. 15, Return of Record, Item #.
Counsel then turned his questioning to another topic.
It is significant that Hendel's counsel asked the engineer only one question about the claimed sight line problem. Id. @ p. 21. The engineers answer gave little support to the sight line claim. Counsel immediately went to another topic.
The property line between the Christy's Market and Etchells properties is depicted by a relatively heavy line on the drawings. At first glance, it would appear to be a formidable barrier to a line of sight to the south from the Christy's Market property. However, in reality, the property line does not present any physical impediment which could effect a line sight.
Plaintiff has not shown how the narrowing of the right of way results in a sight line obstruction. If Hendel's claims no part of the sight line may cross other private property (i.e., Etchells), the court rejects same; the court knows of no such CT Page 3372 requirement. Plaintiff has not presented any authority for such a contention. Also, the subject and the Etchells properties are in a C-1 zone. See Certified Zoning Map and Application for Certification of Location Approval for a Gasoline Filling Station, etc. Return of Record, Items #s 3 and 21. The front setback requirement is therefore 30 feet. Certified Copy of Zoning Regulations, Section 10.A.6, Return of Record, Item, # 2. Thus, no structure can be erected on the front 30 feet of the Etchells property minimizing the likelihood that future development of that property would produce a sight line obstruction. At the public hearing, Hendel's argued:
 ". . . More importantly it is going to affect the sight line to the south because the owner of the station will have no control over how whatever plantings or fencing or anything else that goes on the adjoining lot so the site plan has no there is no control over the sight line from the station to the south so. . . ." Transcript of Proceedings, July 9, 1997, p. 5.
As a matter of law, Hendel's stance about possible future obstructions are irrelevant. "Whether or not a location for a gasoline station is proper is to be determined upon the basis of the actual existing situation when the application is made."Mrowka v. Zoning Board of Appeals, 134 Conn. 149, 153 (1947).
Plaintiff has not established that the protrusion of the properties narrowing the right of way is in any way inimical to highway safety requiring the defendant board of appeals to deny the application.
With respect to the supposed sight line problem, the board specifically stated its findings:
"The vertical and horizontal alignment of Route 32 in the area of the proposed facility is conducive to the creation of ample sight line for traffic entering and exiting the proposed facility. It is the conclusion of the Board that sight line at both points of proposed ingress and egress to and from Connecticut Route 32 to the proposed facility can be developed in such a manner as to comply with sight line requirements of the State of Connecticut Department of Transportation and to provide safe and efficient traffic flow within the Route 32 corridor." Minutes of the Montville Zoning CT Page 3373 Board of Appeals, August 6, 1997, p. 2. Return of Record, Item # 5.
Hendel's has not shown that there is in fact any sight line impediment. Hendel's described it as a "terrible situation" at the boards hearing. Transcript of Public Hearing, July 9, 1997, p. 7, Return of Record, Item # 1. In this appeal the "terrible situation" has been watered down to a condition which "has I potential for blocking the sight line from the Applicants [Sic] property to the highway to the south." Plaintiff's Brief In Support of Its Appeal, December 30, 1997, p. 4. The transition from "terrible situation" to "the potential for blocking the sight line" is a tacit concession there is no sight line obstruction.
The court concludes there was ample evidence before the board that there was no sight line impediment. Plus, the board (members) had personal knowledge of the area.
The plaintiff makes much about the evidence concerning the number of accidents in the area. In his opening statement at the public hearing, plaintiff's counsel pointed out that the report of the applicants traffic engineer made no mention of accident statistics; it was suggested that this was a serious deficiency. The traffic engineer was examined by plaintiff's counsel. The engineer acknowledged that the report did not contain anything about accident statistics. Transcript of Proceedings, July 9, 1997, p. 9. Return of Record, Item # 1. He stated further that he had examined the accident statistics compiled by the Connecticut Department of Transportation for the area. According to that compilation, there had been 19 accidents over a three year period in the area. The 19 accidents occurred on Route 32 between Fort Shantok Road and Route 2. At the court's hearing, counsel for the parties estimated this was a distance of 1500 feet. A review of the exhibit, Drawing: Gasoline Station Location Plan, etc., Return of Record, Item # 24, suggests 1500 feet is a low approximation. In any event, the traffic engineer stated he had not mentioned the number of accidents in his report because he deemed the number of accidents insignificant considering the traffic in the area and also that the Department of Transportation had not designated this area as a problem area. Transcript of Proceedings, July 9, 1997, p. 11, Return of Record, Item # 1.. Later in response to a question from a board member, the engineer explained the accident statistics and how they were compiled. He reiterated his view that the number of accidents was CT Page 3374 not a significant safety concern. "And from any measurable traffic standpoint I don't see it as a concern, the state doesn't see it as a concern. One accident is too many, you know, a hundred is way too many. We drive cars, accidents are going to happen. But, I mean, its not a concern." Id., 33. This is the only evidence in the record before the board regarding accident statistics. When the engineer persisted in saying the number of accidents in his view was no problem, plaintiff's counsel stated I'll leave it up to the Board." Transcript of Proceedings, July 9, 1997, p. 12.
In his closing remarks at the public hearing, plaintiff counsel had little to say about the number of accidents; "The second thing is Mr. Hesketh said accidents will happen, I don't buy that I think we have to use our best efforts to try to prevent accidents. We don't want to say they are inevitable. Nineteen accidents is a lot of accidents in this particular locale with that configuration and that accident record it is a serious matter and you have to make a determination tonight whether this particular location is likely to impair the public safety." Transcript of Proceedings, July 9, 1997, p. 33.
The defendant Zoning Board of Appeals specifically addressed the number of accidents:
 "2. Use of the proposed location for a gasoline/convenience store facility will not imperil the safety of the public. The board considers, based on its knowledge of the area and the report of F.A. Hesketh Associates, this location to be a safe and appropriate location to site a gasoline/convenience store facility. The Board has considered the testimony of Scott Hesketh with respect to accident data between Connecticut Route 2A to the south and Fort Shantok Road to the north. The Board finds that 19 accidents over a three year period, in light of the number of vehicle trips utilizing the highway system over that period of time to be within acceptable limits. The location is not listed by the State of Connecticut Department of Transportation as a high accident location." Minutes of the Montville Zoning Board of Appeals, August 6, 1997, p. 2. Return of Record, Item # 5.
In its Brief, Hendel's states:
"The Defendant Applicants [Sic] traffic consultant indicated that these accident statistics are compared by the DOT with CT Page 3375 other sites which are `the worst in the state' to determine a listing as being dangerous. It is submitted that a worst case scenario (worst in the state) is not the standard to determine suitability of a gasoline station location particularly in light of the statutory mandate and the protrusions into the highway and the sight line issue." Plaintiff's Brief In Support of Its Appeal, December 30, 1997, p. 7.
Neither the traffic consultant(Hesketh) or the defendant board used a "worst in the state standard. Each merely mentioned that the site had not been designated among the worst in the state by the Department of Transportation. Both Hesketh and the Board, each relying on their knowledge of the area and the accidents statistics found that the number of accidents did not require a conclusion that a gasoline station at the Christy's Market site would imperil the public safety.
The court finds and concludes there was substantial evidence in the record developed before the defendant board to support the boards finding that the number of accidents in the area did not require a finding that locating a gasoline station would imperil highway safety. Plaintiff has not established that the accident rate in the area of Route 32 is in any way inimical to highway safety requiring the defendant board of appeals to deny the application or this court to sustain the appeal.
Finally, plaintiff claims the defendant zoning board of appeals illegally delegated the responsibility for determining the adequacy of the sight lines to and from the proposed gasoline station to the Department of Transportation. In its appeal, plaintiff asserts:
 "1. The action of the of the Defendant ZBA constituted an illegal delegation of decision making responsibility to the Connecticut Department of Transportation concerning the suitability of sight line in relation to the configuration of the highway as part of applying the requirements and standards of Section 14-322 of the General Statutes." Amended Complaint, December 30, 1997, p. 4. [104]
Plaintiff claims the boards recognition of the statutory role of the Department of Transportation runs afoul of Farina v.Zoning Board of Appeals, 157 Conn. 420 (1969). The court CT Page 3376 disagrees.
The claim of illegal delegation stems from one sentence in the boards decision.
 "It is the conclusion of the Board that sight line at both points of proposed ingress and egress to and from Connecticut Route 32 to the proposed facility can be developed in such a manner as to comply with sight line requirements of the State of Connecticut Department of Transportation and to provide safe and efficient traffic flow within the Route 32 corridor." Minutes of the Montville Zoning Board of Appeals, August 6, 1997, p. 2. Return of Record, Item # 5.
Plaintiff would have the court ignore the context of that sentence. Immediately before the sentence plaintiff touts, the board states:
 "The vertical and horizontal alignment of Route 32 in the area of the proposed facility is conducive to the creation of ample sight line for traffic entering and exiting the proposed facility." Id.
Later in the decision the board also states:
 "With due regard being given to the proposed access points for the facility to Connecticut Route 32, the traffic signalization in the Route 32 corridor between Connecticut Route 2A and Fort Shantok Road, the vertical and horizontal alignment of the highway, and the anticipated trip generation to and from the proposed facility, the Board finds that the proposed location for the gasoline/convenience store facility will not imperil the safety of the public." [Italics added.] Id.
Access to and from a state highway is regulated by statute. A statute provides:
"Driveway Permits. No person shall construct a new driveway or relocate an existing driveway leading onto a state highway without first obtaining a permit from the Commissioner of Transportation. In determining the advisability of issuing such permit, the commissioner shall include, in his consideration, the location of the driveway with respect to CT Page 3377 its effect on highway drainage, highway safety, the width and character of the highway affected, the density of traffic thereon and the character of such traffic. The person to whom the permit is issued shall comply with the provisions and restrictions contained therein at his own expense." C.G.S. § 13a-143a.
The board's statement which plaintiff claims is a delegation to the Department of Transportation is no more than a recognition of the legal reality that the Commissioner must approve the exact location of the driveway cuts, the points of access to and from Route 32. The Commissioner by statute is to consider highway safety. This must include the adequacy of the sight lines such points of access. The board found the site had the capacity for adequate sight lines. The recognition that the Commissioner has to pinpoint the location of the driveways is not a delegation of the board's responsibility to determine whether the site would or would not imperil the public safety.
The claims raised by the plaintiff in its appeal are without merit.
 CONCLUSION
For the foregoing reasons, the plaintiff's appeal is dismissed.
Parker, J.
A:\HENDEL'S.ZBA